IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL CHENG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 CV 2704 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| CONTINENTAL CLASSIC MOTORS, | ) | |
| INC., a/k/a/ Continental Auto Sports, | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Paul Cheng brings this one-count amended complaint against defendant Continental Classic Motors, Inc., a/k/a Continental Auto Sports ("Continental"), for breach of contract under the Uniform Commercial Code ("UCC") Section 2-716, as adopted by Illinois law in 810 ILCS 5/2-716. Plaintiff seeks specific performance to purchase an identified automobile. On January 23, 2023, defendant moved to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 13). For the reasons discussed below, the court denies defendant's motion.

**BACKGROUND**

As outlined in this court's prior opinion in this case, Cheng v. Continental Class Motors, Inc., No. 22-CV-2704, 2022 WL 17414957 (N.D. Ill. Dec. 5, 2022), defendant sells high-end automobiles and, according to plaintiff, executed a signed contract with plaintiff for the sale of a unique Ferrari F8 Tributo ("the Ferrari" or "the automobile"), VIN ZFF92LLA2L0258094, on March 3, 2022. Plaintiff claims that "[t]he Ferrari F8 is [an] extremely rare and unique automobile and is 1 of 1 in the world," given that "[i]t was the only new/untitled Rosso Fiorano

1

color available (or likely ever manufactured)." Ferrari allegedly no longer makes this automobile. Plaintiff claims that he was "ready, willing, and able to buy the automobile in full with cash" for $475,994.25, but defendant's salesman, Sean Rudy ("Rudy"), "told him to hold off until after the weekend." According to plaintiff, on either March 3, 2022, or March 4, 2022, Rudy called plaintiff and inquired about financing, and plaintiff asked defendant to send financing information for his consideration, although he reiterated that financing was unnecessary because he would pay with cash.

On March 5, 2022, at approximately 9:00 p.m., plaintiff claims that Rudy called him and said "that the automobile had allegedly been sold to another buyer" by defendant's sales manager. The sales manager later called plaintiff and "claimed that another alleged buyer, [who] was a prior customer of Continental, came into the [sic] two days after The Contract between Cheng and Continental was signed and bought the automobile at that time."

On March 21, 2022, plaintiff, through counsel, allegedly sent a letter to defendant, demanding that defendant complete their contract as signed. Although defendant's counsel subsequently contacted plaintiff's counsel, "no specific performance remedy or other resolution resulted." On May 23, 2022, plaintiff filed his original complaint in this court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and on July 22, 2022, defendant moved to dismiss the complaint. He moved to dismiss Count I (seeking specific performance under 810 ILCS 5/2-716) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and to dismiss Count II (seeking monetary damages under 810 ILCS 5/2-713) under Rule 12(b)(1) for lack of federal jurisdiction.

On December 5, 2022, this court granted in part and denied in part defendant's motion to dismiss. The court did not dismiss Count I because it found that plaintiff met his burden to state

a claim for specific performance that was plausible on its face, although it rejected as implausible plaintiff's allegation that defendant continued to possess the automobile. The court dismissed Count II for lack of subject matter jurisdiction. The court determined that there was not an appropriate amount in controversy, which is required to exercise the court's diversity jurisdiction, but the court granted plaintiff leave to amend his complaint to seek the court's supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a).

On January 20, 2023, plaintiff filed his amended complaint—over 20 days after the date by which the court instructed him to do so. In his amended complaint, plaintiff asserts only one count for breach of contract and specific performance under 810 ILCS 5/2-716. Considering the court's previous opinion, plaintiff does not assert that defendant maintains possession of the automobile, but instead requests only that defendant retrieve the automobile from the purchaser and sell it to plaintiff at their agreed price. Nowhere in the amended complaint does plaintiff seek monetary damages due to defendant's alleged breach of contract.

## DISCUSSION

The court begins by admonishing both parties to exercise professional decorum before this court. This includes both professionalism toward opposing counsel and toward the court, which requires filing materials according to the court's schedules.

The court next addresses the foundational contours of its jurisdiction, which are dispositive of certain aspects of the instant motion. The jurisdiction of this court, and all federal courts, is determined by Article III of the U.S. Constitution, which provides that "[t]he judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and . . . to controversies . . . between citizens of different states." U.S. CONST. art. III, § 2. These categories, along with other categories listed in Article III, define the court's

subject matter jurisdiction. One component of the court's subject matter jurisdiction is its diversity jurisdiction, or its ability to hear a case or controversy regarding state law when the case is between citizens of different states. 28 U.S.C. § 1332(a). In that statute, Congress limited the court's diversity jurisdiction to cases and controversies between citizens of different states, and the plaintiff must plead an appropriate amount in controversy that exceeds $75,000.

In its prior opinion, this court determined that it lacked subject matter jurisdiction over plaintiff's claim for monetary damages in Count II because plaintiff did not—and could not, based on the proffered jurisdictional evidence—plead an appropriate amount in controversy. The court granted plaintiff leave to amend his complaint to seek the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Supplemental jurisdiction is the court's ability to hear claims regarding state law when they are "so related to claims in [an] action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). Plaintiff did not seize this opportunity, and declined to amend his claim for monetary damages to seek this court's supplemental jurisdiction, which this court might have exercised in light of plaintiff's claim for specific performance. As this court previously determined, plaintiff's claim for specific performance is properly before this court pursuant to its diversity jurisdiction. In his amended complaint, plaintiff relies solely on his claim for specific performance and does not bring a claim for monetary damages at all.

Defendant attempts to harness plaintiff's failure in its favor by urging the court to dismiss plaintiff's claim for monetary damages "with prejudice." Plaintiff counters that defendant's argument is frivolous, vexatious, and in bad faith, because the court's prior dismissal of plaintiff's claim for monetary damages (i.e., its previous Count II) was based on its lack of subject matter jurisdiction under Rule 12(b)(1). The court agrees with plaintiff that a dismissal

4

for lack of jurisdiction can never be "with prejudice." See MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins. Co., 935 F.3d 573, 581–82 (7th Cir. 2019).

First, dismissal for lack of jurisdiction is not a decision on the merits, which only a court with jurisdiction can render; rather, it is the court's recognition that the issue is not properly before it. See Frederiksen v. City of Lockport, 384 F.3d 437, 438 (7th Cir. 2004) ("'No jurisdiction' and 'with prejudice' are mutually exclusive."). A decision to dismiss with prejudice means that a party cannot properly re-litigate the claim, in either federal or state court. Id. Conversely, a decision to dismiss for lack of federal jurisdiction does not preclude a party from re-filing the claim in state court, to the extent that state law permits the party to do so. Id.

Second, the court does not dismiss plaintiff's claim for monetary damages with prejudice because this claim is not before this court. As defendant argues, plaintiff's amended complaint does not contain a claim for monetary damages under a breach of contract theory. The court is loathe to dismiss a claim, especially to dismiss it with prejudice, when that claim is not before it. To the extent that defendant argues that plaintiff's claim is waived by failing to include it in his amended complaint, defendant cites no case law to support this determination, and the court is aware of no such precedent.

Next, the court evaluates defendant's 12(b)(6) motion to dismiss Count I of the amended complaint. The court begins by clarifying the pleading standard that applies in diversity cases in federal court. As discussed above, plaintiff brings the instant case, which asserts a claim under state law, pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332(a). In diversity cases, federal courts give deference to state law, as the Supreme Court determined in Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Such deference makes sense because the court has jurisdiction to hear diversity cases due to the nature of the parties, rather than the nature of the

claim. See id.

Congress, however, subsequently enacted the Rules Enabling Act, 28 U.S.C. § 2072, which gives the Supreme Court the power to prescribe general rules of practice and procedure for cases in federal district courts and courts of appeals, so long as these rules do not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(a), (b). Pursuant to this authority, the Supreme Court adopted the Federal Rules of Civil Procedure, and in Hanna v. Plumer, 380 U.S. 460 (1965), the Court concluded that, in diversity cases, federal courts should apply federal procedural rules, such as the Federal Rules of Civil Procedure, while applying substantive state law as required by Erie. Id. at 464–474.

Considering Erie and Hanna, the court applies the federal pleading standard in this case, as stated in Federal Rule of Civil Procedure 8(a)(2) and clarified in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). The court does not apply the pleading standard used in Illinois state courts, and plaintiff's citations that rely on the Illinois pleading standard are irrelevant. Moreover, the court emphasizes that Twombly and Iqbal describe a plausibility standard, not a notice- or fact-pleading standard (which many of plaintiff's cited cases utilize), in addition to marking a sea change in federal pleading. See Iqbal, 556 U.S. at 678–79. Thus, plaintiff's citations relying on the pre-Twombly federal pleading standard are inapposite.

Under the federal pleading standard, a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Iqbal, 556 U.S. at 678, citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer

6

more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id.

With this standard in mind, the court evaluates defendant's argument that plaintiff has not stated a plausible claim for specific performance pursuant to Illinois law. To state a cause of action for specific performance, a plaintiff must allege: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform its part of the contract. See Hoxha v. LaSalle Nat'l Bank, 365 Ill.App.3d 80. 85 (2006). Further, a plaintiff seeking specific performance must allege a contract that is sufficiently specific, or "so certain and unambiguous in its terms and in all its parts that a court can require the specific thing contracted for to be done." Bernacchi v. First Chi. Ins. Co., 52 F.4th 324, 329 (7th Cir. 2022) (internal citations omitted).

According to defendant, the contract is not sufficiently specific to be enforced by specific performance because the contract is missing "essential terms," such as a financing plan and the particularities of "when delivery would be occurring, how the car was getting to Texas where Plaintiff lives, etc." Because it is missing these terms, defendant argues that the court would need to order "further negotiations" between the parties, which is disfavored under Illinois law. Plaintiff counters that defendant's argument is frivolous, vexatious, and made in bad faith. Plaintiff argues that defendant's argument regarding missing "essential terms," as well as the evidence that defendant uses to support its argument, are barred by the "four corners rule" and the wrongful prevention doctrine.

Under the four corners rule, courts presume that an integrated, facially clear, and complete written agreement speaks for itself, without extrinsic evidence, and its explicit

7

language stands for the intent of the parties who signed it. See Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 462 (1999). In applying this rule, courts initially evaluate the language of the contract alone. Id. If the language of the contract is facially unambiguous, then the court interprets the language without using extrinsic (or "parol") evidence. Id. at 462–63. If the court determines that the language is susceptible to more than one meaning, the court may use extrinsic evidence to resolve the ambiguity. Id. Whether the language in an agreement is ambiguous and requires additional evidence for interpretation is a question of law. See River's Edge Homeowners' Ass'n v. City of Naperville, 353 Ill. App. 3d 874, 878 (2d Dist. 2004).

Pursuant to the four corners rule, plaintiff argues that "whether the contract is 'specific enough' (which no case has held is even required under 2-716) is to examine the contract itself." (Emphasis in original). Plaintiff argues that contract "could not be more clear": plaintiff will pay, defendant will provide the automobile, and "nothing else matters." Defendant replies that plaintiff, in his pleading, "admitted that [financing] negotiations were ongoing," and in any case, even if the court is barred from considering extrinsic evidence about plaintiff's financing, "looking at the document, there is an absolute absence of other essential terms" (i.e., terms beyond financing).

At this stage, taking the facts in the light most favorable to plaintiff, the court does not need to determine whether the court is barred from using extrinsic evidence to interpret the contract, because the court would still consider plaintiff's alleged request for additional financing information for another purpose. Specifically, in the instant case, even if the court barred extrinsic evidence for the purpose of interpreting the contract, the court would evaluate evidence about plaintiff's financing because it is probative of plaintiff's ability to perform under the contract. Proof of plaintiff's ability to perform is the second element necessary for specific

8

performance. In this case, plaintiff alleges that he was ready, willing, and able to pay for the automobile in cash, without financing.

Plaintiff's next argument is that defendant's motion fails under the wrongful prevention doctrine. Under the wrongful prevention doctrine, when one party directly causes a contractual condition to fail, the court may fully enforce the contract against that party. See Cummings v. Beaton & Associates, Inc., 249 Ill. App. 3d 287, 306 (1st Dist. 1992). A party cannot take advantage of its own conduct to claim that the resulting failure of the condition defeats its liability, or otherwise profit from its own wrongdoing. Id. In the instant case, plaintiff argues that the wrongful prevention doctrine prevents defendant from claiming that the contract was not specific enough based on missing financing terms because defendant was the party that suggested financing, as well as failed to send financing information to plaintiff.

The court, however, is not convinced that the wrongful prevention doctrine applies in this case, because plaintiff does not allege that financing was a contractual condition. In fact, plaintiff expressly alleges the exact opposite: that financing was a non-essential term because plaintiff planned on paying in cash. To the extent that plaintiff argues in the alternative (i.e., to the extent that plaintiff first argues that financing is non-essential, and then argues in the alternative that financing is an essential condition of performance), the court agrees with plaintiff that defendant should not profit from its own failure to provide plaintiff with additional financing information. That being said, defendant does not argue that financing is the only missing essential term, so the wrongful prevention doctrine is not dispositive in this case.

With those issues resolved, the court moves on to the more significant portion of the motion: whether plaintiff's claim for specific performance under Illinois law is plausible. Under 810 ILCS 5/2-716, a court may order specific performance where the goods are unique, and it

9

may include in its judgment "such terms and conditions as to payment of the price, damages, or other relief as the court may deem just."

Plaintiff argues that he establishes the elements required for specific performance because he alleges a contract for the sale of a one-of-a-kind, unique good, and gives defendant "fair notice" of his claim. As discussed above, plaintiff's argument falls flat where he relies on a notice-pleading standard rather than the federal plausibility standard. He further misses the mark where he confuses the foundation of defendant's argument: it is not that plaintiff's complaint is missing "essential terms"; the problem, according to defendant, is that the contract itself is missing these terms. Nevertheless, plaintiff counters that all that is required under 810 ILCS 5/2-204(1) is that the parties identified goods and their price, with no requirement that the parties determined a "method and date for delivery for a valid contract."

Unlike plaintiff, the court does not read defendant's motion to argue against specific performance based on the validity of the contract. In fact, defendant specifically acknowledges that it assumes a valid and enforceable contract for the purposes of the motion. Instead, defendant argues that plaintiff is not entitled to specific performance because the specificity of the valid contract is insufficient to warrant an atypical remedy for the alleged breach. Without a clear contractual term outlining financing, specific performance would require additional negotiations between the parties, with the risk that the court would functionally rewrite the contract for the parties.

At this stage, the court disagrees with defendant, and concludes that financing is non-essential to the agreement, making the instant contract sufficiently specific to state a plausible claim for specific performance. If it signals anything, the lack of a contractually defined financing term signals that plaintiff never sought financing, rather than indicating that the

10

contract was missing an essential term.  See Schilling v. Stahl, 395 Ill. App. 3d 882, 888 (2009) ("To the extent that any such rights are not included, those rights do not exist; the non-inclusion of those rights does not signal a dispute as to what rights exist.").  This is especially true in the instant case because plaintiff was allegedly ready to pay in cash.  The court is also not convinced at this stage that other terms, including "when delivery would be occurring, how the car was getting to Texas where Plaintiff lives, etc.," are essential.  Therefore, the court denies defendant's motion to dismiss Count I.

## CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss the amended complaint (Doc. 13).  Defendant is directed to file an answer to the amended complaint by April 25, 2023.  The parties are directed to file a Joint Status Report using this court's form on or before May 2, 2023.

**ENTER:**

Robert W. Gettleman
**United States District Judge**

**DATE:  April 4, 2023**